IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VENSON LANE MYERS,<br><br>                              Plaintiff,<br><br>v.<br><br>L. E. SCRIBNER, et al.<br><br>                              Defendants. | Case No. 09cv1425 WQH (PCL)<br><br>**REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS** |

**I.**

**INTRODUCTION**

Plaintiff, Venson Lane Myers ("Plaintiff"), a prisoner proceeding *pro se* and *in forma pauperis*, filed a Complaint against Defendants under Title 42, United States Code § 1983 for violations of his First Amendment right to free exercise of religion and violations of his rights under the Religious Land Use and Institutionalized Persons Act. (Doc. No. 1.) Defendants filed a Motion to Dismiss the Complaint on exhaustion grounds and for failure to state a claim under federal law. (Doc. No. 10.) Upon reviewing the Complaint, Defendants' Motion and Plaintiff's Opposition, the Court recommends Defendants' Motion to Dismiss be GRANTED.

## II.

## BACKGROUND

**A.   Factual Background**

The following factual background is taken verbatim from the District Court's Order dismissing Plaintiff's first complaint:

> On approximately July 7, 2007, Plaintiff considered organizing a Christian-based celebratory feast. (*Comp.*, 4[footnote omitted].) Plaintiff alleges that based on his research of prison rules and regulations, inmate religious groups are permitted no more than two religious events each year where the prison provides foods with religious significance. (*Id.*)
>
> On August 23, 2007, Plaintiff[] discussed his planned religious feast with the Associate Warden, Defendant Builteman. (Compl., 3.) Defendant Builteman told Plaintiff to submit a proposal to the prison chaplain, Defendant Richey, for consideration. (*Id.*)
>
> On or about September 24, 2007, Plaintiff submitted a request for administrative approval of a religious food feast on December 8, 2007 for 800 members of the Christian inmate community. (*Compl.*, 12.) After various communications with Prison officials, on October 3, 2007, Plaintiff was notified by Defendant Builteman that the proposal for a December 8, 2007 Christian feast was denied. (*Id.*, 5, 9.)
>
> On October 8, 2007, Plaintiff filed a formal first-level appeal, designated as CAL-A-07-01891, concerning the denial of the proposed Christian feast. (*Compl.*, 10.) On October 14, 2007, Plaintiff filed an additional formal appeal, to be attached to the previous appeal (CAL-A-07-01891). (*Id.*, 13.) On October 24, 2007, a formal hearing was held on Plaintiff's appeal. (*Id.*, 3, 15.)
>
> On December 12, 2007, Defendant Builteman issued a formal decision acknowledging that the Christian faith places religious significance on "celebration bread and wine (juice)" in accordance with the Lord's Supper and granting, in part, the appeal. (*Report*, 3.) The decision, therefore, stated that such a ceremony would be allowed. (*Id.*) But the decision denied the proposed attendance of 800 inmates, citing safety and security concerns, and denied Plaintiff's claim that Chaplain Richey cancelled worship services in retaliation for the appeal. (*Id.*) Finally, the decision also informed Plaintiff that "the issue may be submitted at the Second Level of Review." (*Compl.*, 15.)

Myers v. Scribner, 2009 U.S. Dist. LEXIS 24298, *2-*3 (2009).

**B.   Plaintiff's First Federal Complaint**

Following this sequence of events, on January 18, 2008, Plaintiff filed his first complaint in federal court alleging violations of his constitutional rights identical to those alleged in the instant complaint. Myers v. Scribner, 2009 U.S. Dist. LEXIS 24298 (2009) (Southern District of California, Case No. 08cv0117 W (WMC).) Defendants filed a Motion to Dismiss that

complaint for failure to exhaust administrative remedies and failure to state a claim. (Id.) On March 23, 2009, the District Court granted Defendants' Motion to Dismiss on grounds that Plaintiff had failed to exhaust administrative remedies and dismissed Plaintiff's complaint without prejudice. Myers v. Scribner, 2009 U.S. Dist. LEXIS 24298 (2009). In the Order granting the Motion to Dismiss, the Court noted "the lawsuit is dismissed without prejudice so that Plaintiff may refile the litigation if he exhausts administrative remedies." (Id. at *7, Fn. 2.)

Thereafter, on March 29, 2009, Plaintiff requested a Second-Level review of his 602 grievance form previously submitted on October 8, 2007. (Doc. No. 1-1, 3.) Plaintiff claimed he was "dissatisfied with the outright denial of the requested feast" and requested an appeal of the grievance he had submitted 17 months prior. (Id.) On April 1, 2009, Plaintiff's request was screened out at the Second Level because "[t]here has been too great a TIME LAPSE between when the action or decision occurred and when you filed your appeal with no explanation of why you did not or could not file in a timely fashion." (Doc. No. 1-1, 5.) Plaintiff was further instructed that to continue to pursue this matter, he must "submit an explanation and supporting documentation explaining why you did not or could not file your appeal timely." (Id.) Four days later, on April 5, 2009, Plaintiff drafted a note to the Appeals Coordinator stating: I'm submitting this 602 for exhaustion purposes! Your form required an explanation before proceeding so now you can give your final finding on the issue." (Id. at 6.) Plaintiff's appeal was screened out again on April 9, 2009 stating the following reason:

> Upon review of this issue it is noted the alleged incident occurred in 2007, and you failed to resubmit your appeal within 15 days of receiving the 1st Level Response on 12/14/2007. Therefore, this appeal cannot be accepted.

(Id. at 7.) Plaintiff's documents submitted in support of his complaint do not reference any further action by Plaintiff on this issue.

**C.     Plaintiff's Second Federal Complaint**

Plaintiff filed the instant complaint on June 30, 2009. (Doc. No. 1.) On October 28, 2009, Defendants filed a Motion to Dismiss alleging Plaintiff had failed to exhaust administrative remedies and had otherwise failed to state a claim. (Doc. No. 10.) On November 30, 2009. Plaintiff opposed the Motion. (Doc. No. 12.)

# III.

# DISCUSSION

## A. Legal Standard

The Prison Litigation Reform Act of 1995 (PLRA) amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. Porter v. Nussle, 534 U.S. 516, 524 (2002). Even when a prisoner seeks relief not available in grievance proceedings, notably monetary damages, exhaustion is a prerequisite to suit. Id.; Booth v. Churner, 532 U.S. 731, 741 (2001). Similarly, exhaustion is a prerequisite for all prisoner suits regarding the conditions of their confinement, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. Porter, 534 U.S. at 532.[1]

The PLRA requires proper exhaustion of administrative remedies. Woodford v. Ngo, 548 U.S. 81, 83 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90-91. Thus, compliance with prison grievance procedures is required by the PLRA to properly exhaust. Id. The PLRA's exhaustion requirement cannot be satisfied "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." Woodford, 548 U.S. at 84. "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. 199, 218 (2007).

---

1. These remedies need not meet federal standards, nor must they be "plain, speedy and effective." Porter, 534 U.S. at 524 (citations omitted); Booth, 532 at 739-40 & n.5 (2001). The obligation to exhaust persists as long as some remedy is available; when that is no longer the case, the prisoner need not further pursue the grievance. Brown v. Valoff, 422 F.3d 926, 934-35 (9th Cir. 2005); Marella v. Terhune, 568 F.3d 1024, 1028 (9th Cir. 2009) (finding an inmate's claim fully exhausted when it was summarily denied for untimeliness and he was given no recourse for further appeal).

The State of California provides its prisoners the right to appeal administratively "any departmental decision, action, condition or policy perceived by those individuals as adversely affecting their welfare." CAL. CODE REGS. TIT. 15, § 3084.1(a). It also provides them the right to file appeals alleging misconduct by correctional officers and officials. Id. § 3084.1(e). In order to exhaust available administrative remedies within this system, a prisoner must proceed through several levels of appeal: (1) informal resolution, (2) formal written appeal on a 602 inmate appeal form, (3) second level appeal to the institution head or designee, and (4) third level appeal to the Director of the California Department of Corrections and Rehabilitation. Barry v. Ratelle, 985 F. Supp. 1235, 1237 (S.D. Cal. 1997) (citing CAL. CODE REGS. TIT. 15, § 3084.5). A final decision from the Director's level of review satisfies the exhaustion requirement under § 1997e(a). Id. at 1237-38.

Lastly, non-exhaustion under § 1997e(a) is an affirmative defense which should be brought by defendants in an unenumerated motion to dismiss under Federal Rule of Civil Procedure 12(b). Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). However, a complaint may be dismissed by the court for failure to exhaust if a prisoner "conce[des] to nonexhaustion" and "no exception to exhaustion applies." Id. at 1120.

**B.      Analysis**

Defendants argue Plaintiff did not properly exhaust his administrative remedies prior to the filing of this complaint as mandated by § 1997e(a). Specifically, they contend Plaintiff's attempts to exhaust are deficient because the record includes no final decision at the Director's level. In response, Plaintiff contends that a "perfected appeal grievance is unobtainable" in this action because his attempt to appeal his initial 602 grievance to the second level of review was not accepted for untimeliness. (Doc. No. 12, 2.) Plaintiff further contends that the first level decision was rendered on December 14, 2007, clearly past the date of December 8, 2007 which is the date of the proposed religious feast. (Id.) The Court notes Plaintiff does not allege any undue hardship or unusual circumstance prevented him from filing a timely appeal.

The record shows Plaintiff attempted to appeal his initial 602 grievance on March 29, 2009, six days following the District Court's Order of March 23, 2009 dismissing his complaint

for failure to exhaust administrative remedies. <u>Myers v. Scribner</u>, 2009 U.S. Dist. LEXIS 24298 (2009). Plaintiff was denied review at the second level for failure to submit his appeal within the 15 day period after receiving a response to his 602 grievance on December 14, 2007. (Doc. No. 1-1, 5.) When Plaintiff attempted to comply with the Appeals Coordinator's instructions, he did not offer any explanation as to why he was unable to file an appeal within the time frame specified in the decision rendered on his initial grievance. (<u>Id.</u> at 6.) Rather, Plaintiff merely stated he was submitting this appeal for exhaustion purposes. (<u>Id.</u>) On April 9, 2009, his request for second level review was rejected as untimely. (<u>Id.</u> at 7.)

In this case, it appears that Plaintiff failed to exhaust the administrative remedies available to him. First, he failed to submit a request for appeal of the initial decision on his 602 grievance within the fifteen day time limit indicated on the response he received on December 12, 2007. Second, when he attempted to appeal that initial decision of his grievance, 15 months after receiving the initial decision, his appeal was screened-out with a request to clarify what circumstances prevented him from filing a timely request for appeal. The only event or action he detailed in his response, by his own admission, was that he was filing a request for appeal of the initial decision for exhaustion purposes. He did not offer any explanation as to why he waited almost 15 months to appeal the initial decision. Furthermore, he made no attempt to cure the defects in his current request for appeal or to submit a request for review at the third level. The instructions on the screening form were clear: "if you would like to pursue this matter further, you must submit an explanation and supporting documentation explaining why you did not or could not file your appeal timely." Lastly, although the form states: "you failed to resubmit your appeal within 15 days of receiving the 1st Level Response on 12/14/2007[, t]herefore, this appeal cannot be accepted," Plaintiff was not precluded from filing a new grievance. Nothing on the face of the screening form can be construed as informing Plaintiff that any attempt to pursue this matter was futile because he could have submitted a 602 with supporting documentation or an explanation regarding the time lapse between the action and the grievance submission.

The Court also finds the Ninth Circuit's decision in <u>Marella v. Terhune</u> instructive. 562 F.3d 983 (9th Cir. 2009). In that case, plaintiff Marella's administrative grievance was denied at

the initial stage as untimely because it was filed thirty-three days after the incident. Id. at 1026. The screening form Marella received after the denial included the following language: "[t]his screening action may not be appealed unless you allege the above reason is inaccurate." Id. at 1027. Marella acknowledged that the grievance was untimely; therefore, he lacked any grounds for appeal. Id. However, Marella argued that during the period in which his grievance would have been timely, he had been hospitalized and was segregated. Id. at 1026. As a result, Marella claimed that he lacked both access to the appropriate forms and knowledge of the procedural requirements. Id. The district court dismissed Marella's case for failure to exhaust, however, the Ninth Circuit reversed and remanded the action. The Court noted that "if the district court finds that [Marella] had the opportunity and ability to file his initial grievance timely, but failed to do so, his case should be dismissed." Id. at 1028. The Marella Court cautioned against rigidly applying the requirements of proper exhaustion, or finding "no exceptions to the timely filing requirement exist." Id. at 1027.

The circumstances presented in this case are distinguishable from Marella but the Court's instruction applies. Unlike Marella, the record in this case demonstrates that Plaintiff had the opportunity and ability to properly exhaust, but failed to do so. Plaintiff was expressly informed upon receipt of the decision rendered on his initial complaint that he had the option to appeal the decision. (Doc. No. 1-1, 3.) The document noting the decision included instructions on how to properly pursue his grievances.[2] Id. Rather than following those instructions, Plaintiff decided to bypass the second level of review by filing suit directly in federal court one month following the decision. Myers v. Scribner, 2009 U.S. Dist. LEXIS 24298 (2009). When that attempt resulted in a dismissal of his complaint, Plaintiff rushed to submit a request for second level review to the appeals coordinator; 15 months after the initial decision. (Doc. No. 1-1, 2-3.) As a result, and following Plaintiff's failure to account for his delay, this request was screened out as untimely. (Id. at 7.) As in Marella, Plaintiff received a screening form containing language that

---

2. . At Section F, the Inmate/Parolee Appeal Form states: "If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator *within 15 days of receipt of response*." (Doc. No. 1-1, 3) (emphasis added).

stated that his appeal would not be accepted at this level due to the time lapse between the decision and the request for appeal.  However, unlike the plaintiff in <u>Marella</u>, Plaintiff never cited any exceptional circumstances that prevented him from filing a timely grievance and appeal.  Plaintiff's "explanation" to the appeals coordinator does not qualify as an explanation. (Doc. No. 12, 2.)  Plaintiff's second level appeal lacks allegations of hardship or special circumstance as to why he could not file within the 15 day period following the initial denial. (Doc. No. 1-1, 6.)  Therefore, because Plaintiff "had the opportunity and ability to file his initial grievance timely, but failed to do so, his case should be dismissed." <u>Marella</u>, 562 F.3d. at 1028.

      Moreover, Plaintiff's knowledge of the appeals process is carefully documented in that he had submitted two accepted appeals to the third level of review prior to this incident.  (<u>See</u> Appellant Appeal History, Exhibit A to Decl. Of N. Grannis, Doc. No. 10-2, 6.) That fact further distinguishes the instant action from <u>Marella</u> in that Plaintiff demonstrated his knowledge of and access to the proper administrative appeal forms and procedures. Even if Plaintiff were asserting that the grievance process was closed to him because his appeal had been "screened out," the record shows that Plaintiff successfully utilized the grievance procedures prior to 2007.  Plaintiff not only filed several grievances, but two resulted in review at the third level. (Doc. No. 10-2, 6.)

      In sum, the law is clear that a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court. <u>Woodford</u>, 548 U.S. at 83-83.  Although Plaintiff contends he was unable to appeal because the date of the proposed event had passed, even when a prisoner seeks relief not available in grievance proceedings, exhaustion is a prerequisite to suit. <u>See</u> <u>Porter</u>, 534 U.S. at 524.  Plaintiff deliberately abandoned the proper course of appeal in violation of the prison's procedural rules for filing grievances and attempted to bypass the second level of review. Plaintiff has failed to exhaust administrative remedies available to him; therefore, his complaint should be DISMISSED.

## IV.

## CONCLUSION

For the reasons set forth above, the Court recommends Defendants' Motion to Dismiss be **GRANTED**; and Plaintiff's Complaint be dismissed without prejudice.  This Report and Recommendation is submitted to United States District Judge William Q. Hayes, pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(c) of the United States District Court for the Southern District of California.

Any written objections to this Report and Recommendation must be filed with the Court and a copy served on all parties on or before **June 15, 2010**. The document should be captioned "Objections to Report and Recommendation."

Any reply to the objections shall be served and filed on or before **June 29, 2010**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of this Court's order.  Martinez v. Ylst, 951 F.2d 1153, 1156 (9th Cir. 1991).

**IT IS SO ORDERED.**

DATE: May 24, 2010

Peter C. Lewis
U.S. Magistrate Judge
United States District Court